Gary **BURRIS,** Petitioner–Appellant,

v.

Robert A. **FARLEY,** Warden,
Respondent–Appellee.

No. 94–1328.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 1995.

Decided March 28, 1995.

David Vandercoy (argued), Valparaiso University Law Clinic, Valparaiso, IN, for petitioner-appellant.

Wayne E. Uhl, Dist. Atty. Gen. (argued), Indianapolis, IN, for respondent-appellee.

Before CUDAHY, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

One day in January 1980 Gary Burris decided that he needed money in the worst way—and that is how he set out to obtain it. Burris called for a taxi. When the cab arrived, Burris and two friends entered, robbed the driver, forced him to remove his clothes, and shot him in the temple as he begged for mercy. Police discovered the driver in an alley, his hands tied behind his back, unclothed except for socks, held fast to the ground by his own frozen blood. They found the murder weapon hidden in loudspeakers owned by Burris's girlfriend, whose sister saw him with wads of $1 and $5 bills the night of the murder. The taxi itself was nearby, and Burris had flushed the driver's run sheet down his toilet. Burris later said that he executed the driver—as he had planned to do before calling the cab—to eliminate any witness. He had done time, Burris related, and "wasn't going back to the joint." Well, he is again in "the joint," but the State of Indiana does not want him to remain. Burris has been sentenced to die for his crime. He seeks relief under 28 U.S.C. § 2254.

A jury convicted Burris in December 1980. The jury later recommended capital punishment. The judge agreed and imposed a death sentence in February 1981. In June 1984 the Supreme Court of Indiana affirmed. *Burris v. State,* 465 N.E.2d 171 (Ind.1984). A petition for collateral review in state court followed. The Supreme Court of Indiana ultimately rejected all of Burris's challenges to the conviction but concluded that disparaging comments by his attorney entitled him to another penalty trial. *Burris v. State,* 558

N.E.2d 1067, 1073–77 (Ind.1990). After the new jury was unable to make a unanimous recommendation concerning the appropriate penalty, the judge made the decision himself, again sentencing Burris to death. (The jury's sentencing recommendation is not binding in Indiana. *Schiro v. Farley,* — U.S. ——, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); cf. *Harris v. Alabama,* — U.S. ——, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).) Burris took his third appeal to the Supreme Court of Indiana.

■ While that appeal was pending, Burris filed a petition under § 2254 in federal court. Sentencing issues obviously had not been exhausted, so Burris confined his arguments to those potentially affecting the judgment of conviction. His lawyer was well aware that other issues would become salient if the Supreme Court of Indiana were to affirm the death sentence, but he elected to pursue the exhausted claims immediately. Burris lost in both forums. The district court denied the petition, 845 F.Supp. 636 (N.D.Ind.1994), and the Supreme Court of Indiana affirmed the sentence, 642 N.E.2d 961 (Ind.1994). Briefing of Burris's appeal in this court was completed before the Supreme Court of Indiana affirmed the death sentence; now, fearing that the state will characterize any collateral attack on the sentence as an abuse of the writ, see *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Gomez v. United States District Court,* 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992), Burris wants to pretend that these federal proceedings never happened. He asks us to vacate the district court's judgment without considering his appeal on the merits and to remand so that he may file a new petition challenging both conviction and sentence.

■ What Burris wants is a summary decision that successive collateral attacks would not abuse the writ of habeas corpus. Yet *McCleskey* holds that abuse of the writ is an affirmative defense. 499 U.S. at 477, 111 S.Ct. at 1461. Burris has yet to file a collateral attack on his sentence, and the state therefore has yet to interpose a defense. We asked Burris's lawyer at oral argument when the petition would be filed and what issues it

would raise; counsel said he had no idea. Although Burris may have a persuasive answer if the state interposes the abuse-of-writ defense in the future, nothing we have seen makes this defense so airtight that we should preempt the subject. Instead we follow the norm that federal courts resolve with dispatch the cases before them, rather than protracting matters while prisoners add additional claims. *In re Blodgett,* 502 U.S. 236, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992); *In re Blodgett,* — U.S. ——, 113 S.Ct. 1965, 124 L.Ed.2d 66 (1993) (O'Connor, J., in chambers).

■ When a state handles his case in glacial fashion, a prisoner need not wait for global warming to set in. *Lane v. Richards,* 957 F.2d 363 (7th Cir.1992). The extended proceedings needed to fix the penalty for murder need not imply that a person with a colorable claim of innocence must cool his heels in prison for a decade or more before being entitled to present to a federal court his challenge to the judgment of conviction; and we doubt that Indiana believes that a prisoner whose principal hope lies in setting aside his conviction must stake his life on prevailing (because, if he loses, he forfeits any entitlement to contest the penalty later). Yet Burris does not argue that Indiana has delayed unduly. He defends his petition not by saying that delay *authorized* a filing but by saying that the lapse of time *compelled* him to file—that he had to commence his challenge in 1992 to avoid the possibility that the state could assert untimeliness under Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts. That argument is ethereal to the point of invisibility.

■ When he filed his petition in the district court, Burris was pursuing a direct appeal of his sentence to the Supreme Court of Indiana. We have not found any case holding that a prisoner *must* file under § 2254 while the state's appellate process is ongoing in order to avoid a defense of delay under Rule 9(a); the only court that has addressed the question has held the opposite. *Fell v. Rafferty,* 736 F.Supp. 623, 626–29 (D.N.J. 1990). Cf. *Oses v. Massachusetts,* 961 F.2d

985, 987 (1st Cir.1992). Burris had ready solutions if he was unwilling to rely on *Fell:* he could have filed his petition and asked the district court to stay proceedings until the Supreme Court of Indiana acted on the sentencing appeal; or he could have asked the district court to require the state to elect between consolidating all claims in one petition, thus waiving its rights under Rule 9(a), and expeditious decision on all challenges to the conviction, thus waiving its rights under Rule 9(b). We have recommended the former course in civil litigation when one or more legal theories is unripe. For example, a fired employee may have claims under state contract law and federal antidiscrimination law. The contract claim is ripe immediately, and the statute of limitations is ticking; the federal claim will not be ripe until the processes of the EEOC have been exhausted. Would-be plaintiffs still must consolidate these claims in a single proceeding, and if they fail to do so the second will be dismissed under the doctrine of claim preclusion. Litigants may protect themselves by filing the state-law claim in time to satisfy the statute of limitations and asking the district court to suspend proceedings until the federal-law claim can be added. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337 (7th Cir.1995); *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223, 225 (7th Cir. 1993); *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1365 (7th Cir.1988). This is equivalent to filing a petition raising all exhausted issues and asking the court for a stay until the remaining issues have been exhausted. Instead Burris pressed ahead, seeking (and receiving) an immediate decision even though other issues were percolating through state court. This strategy all but dares the state to argue that a later petition is an abuse of the writ. *Rose v. Lundy,* 455 U.S. 509, 520–21, 102 S.Ct. 1198, 1204–05, 71 L.Ed.2d 379 (1982) (O'Connor, J., concurring). Burris must meet that defense if and when the state interposes it. The motion to remand is denied, and we proceed to the merits.

Burris's principal argument is that the jury instructions misdescribed the elements of felony murder. Indiana defines a death in the course of a robbery as murder. Ind. Code § 35–42–1–1(2). Robbery in Indiana has (or had at the time of the killing; we disregard later amendments) three degrees: taking property by threatening or using force, or putting the victim in fear, is a Class C felony; committing these acts while armed with a deadly weapon is a Class B felony; if the robbery "results in either bodily injury or serious bodily injury" it is a Class A felony. Ind.Code § 35–42–5–1. Indiana also defines as "involuntary manslaughter" a killing in the course of committing any Class C felony. Ind.Code § 35–42–1–4(1). Death during simple robbery thus is involuntary manslaughter; it can't also be murder, Burris insists, so the judge should have instructed the jury that the state had to prove a Class A robbery as the predicate offense under the felony murder rule. There are four problems with this argument, each dispositive against it.

■ *First,* it was not presented at trial or on direct appeal and therefore has been forfeited. *Coleman v. Thompson,* 501 U.S. 722, 744–51, 111 S.Ct. 2546, 2561–66, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). See also *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). Burris first advanced the argument in its current form on collateral review; the Supreme Court of Indiana deemed the argument waived because it had not been presented on direct appeal. 558 N.E.2d at 1077. Burris does not contend that his appellate counsel was ineffective and therefore cannot show "cause" for this omission. (He does complain about the services of his two trial lawyers; more on that below.)

■ *Second,* the proper relation between murder and involuntary manslaughter is an issue of Indiana's law, so that even if Burris is right he is not entitled to relief here. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). See also, e.g., *Gilmore v. Taylor,* —— U.S. ——, ————, 113 S.Ct. 2112, 2117–19, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Smith v. Phillips,* 455 U.S. 209, 221,

102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Burris does not say that the Constitution forbids a state to treat as murder a killing in the course of any-old robbery; given the history of the felony-murder doctrine, no such argument would be tenable. Indiana may, if it wants, convict a person of murder when death ensues from an ordinary robbery. Cf. *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Whether Indiana *does* want to do this is something for that state to work out under its own processes, without federal interference. *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir.1991); see also Ronald J. Allen, *Mullaney v. Wilbur, the Supreme Court, and the Substantive Criminal Law—An Examination of the Limits of Legitimate Intervention*, 55 Tex.L.Rev. 269 (1977).

■ *Third*, the Supreme Court of Indiana does not share Burris's understanding of state law. *Averhart v. State*, 614 N.E.2d 924, 934–35 (Ind.1993), rejects the assertion that only a Class A robbery can support a felony murder conviction. Burris replies that *Averhart* does not hold that a Class C robbery is sufficient; maybe a Class B robbery is essential. But the argument Burris made to the district court and renews here is that a Class A robbery is indispensable; that view is defunct.

■ *Fourth*, the argument makes no sense in a case of this character. It starts from the premise that statutory definitions of crime never overlap; thus if a Class C felony serves as the predicate offense of manslaughter, some higher degree must be essential for murder. The belief that statutes do not overlap is incorrect; legislatures often enact different penalties for the same acts, leaving the choice to prosecutorial discretion. See *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). One could at least understand an argument that a higher degree of robbery is important when the death is accidental. Suppose Burris had robbed the cabbie and left him unharmed but on foot, only to be run down in the street as he walked to a police station to report the theft. Then Burris would have an argument that his deeds caused no immediate harm and that the correct offense would be involuntary manslaughter. But that is not what happened. Burris shot the taxi driver in cold blood. It would be silly to instruct the jury that before it could convict, it had to find not only that the driver died at Burris's hand (which the instructions said was essential) but also that the driver suffered "either bodily injury or serious bodily injury". People whose brains have been blown out suffer "serious bodily injury." Nothing in the Constitution requires a state to give redundant instructions to the jury.

■ Seeking to get his challenge to the jury instruction through a back door, Burris argues that the information charging him with the crime was deficient. He made a version of this argument on direct appeal, only to be met by the twin observations that it had not been preserved at trial and is wrong to boot. 465 N.E.2d at 180–81. Such a dual-ground decision shows that the judgment rests on an independent state ground and is insulated from federal review. *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989). We add that it is largely a restatement of the position that a Class C robbery is not enough, a position that we have dealt with. Burris tried to differentiate this argument from the preceding one by stressing that the charging papers did not narrate the mental-state element of robbery. Yet he was not charged with robbery; he was accused of murder, and the information included all elements of that crime. The Supreme Court of Indiana observed that a charge is sufficient when the nature of the accusation is clear: "An information must state the crime in words of the statute or words that convey a similar meaning. . . . The information did allege that the murder was committed 'while in the commission of Robbery, a felony.' . . . [T]he information could not have misled the defendant and he does not claim that he was misled." 465 N.E.2d at 181. That response is equally compelling when the argument is recast in constitutional terms, as Burris has done in this proceeding. See *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974); *United States v. Cruikshank*, 92 U.S. 542, 557–58, 23 L.Ed. 588 (1876).

Burris accuses the prosecutor of misconduct. As he sees things, the prosecutor introduced perjured testimony and improperly vouched for the quality of the state's evidence with comments such as: "Seldom do I have a circumstantial case that looks that good." None of the prosecutor's comments was raised on direct appeal, and only one on collateral review (it was an innocuous comment, a self-deprecating remark about being a "hot dog" and trainer of other prosecutors who nonetheless had to rely on his notes). Burris's brief in this court asserts that "Burris raised the propriety of the [prosecutor's] comments on direct appeal; the court found the issue to have been waived but then addressed the merits. *Burris,* 465 N.E.2d at 187, 188." The assertion is incorrect; the cited pages dealt with prosecutorial comments during the penalty phase of the proceeding, while the arguments Burris now makes concern allegations of prosecutorial misconduct during the guilt phase. Most of these arguments have never been presented to the Supreme Court of Indiana and therefore have been forfeited. True, the Supreme Court of Indiana did not expressly invoke a waiver doctrine, but it did not have to; a state court need not address, and deem waived, contentions not made to it. *Harris,* 489 U.S. at 269–70, 109 S.Ct. at 1046–47 (O'Connor, J., concurring); *Jenkins v. Gramley,* 8 F.3d 505, 507–08 (7th Cir.1993).

Whatever one may say about the adequacy of trial counsel, Burris does not deny that he received effective assistance of appellate counsel on the direct appeal. His appellate lawyer deemed this subject not worth space in his brief. It was a reasonable judgment. The brief raised other, more substantial arguments. See *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The prosecutor's comments in closing argument do not come close to those in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The one prosecutorial-misconduct issue that was ventilated on appeal concerns the witness William Kirby, who was housed in the same cell block as Burris when both were awaiting trial.

Burris tried to recruit Kirby to serve as a jailhouse lawyer and gave him vital details. Kirby relayed his knowledge to the prosecutor, who put Kirby on the stand at trial. Burris does not contend that Kirby lied about the story Burris told in prison; the details of the confession are essentially uncontested. Instead the claim is that Kirby misdescribed the reward he was receiving for his assistance—and that the prosecutor knew of the lie, producing a denial of due process under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Kirby said that in return for his testimony the sentence on his own offenses would be reduced from 15 to 10 years. Burris says that the actual deal called for a deeper discount, because Kirby's ordinary sentence would have exceeded 15 years. The statutory maximum was 70 years. The prosecutor's response is that Kirby and the prosecutor had reached a deal that certain charges would be dismissed, and a 15 year sentence imposed on the remainder, before Kirby brought news of Burris's confession. Then Kirby's testimony was exactly right. And this is what the Supreme Court of Indiana found. 465 N.E.2d at 183–85. The court concluded "that the State and Kirby had tentatively reached an agreement to ... impose two concurrent fifteen year terms on the robbery charges *before* Kirby ever met the defendant." *Id.* at 184. That finding is entitled to a presumption of correctness, 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981), which survives Burris's objections. The time to plumb the subject was at trial: "[t]he defense had access to the materials surrounding the guilty plea and could have brought out these other allegations in order to try to impeach Kirby on cross-examination." 465 N.E.2d at 184. Trying to resurrect the claim by blaming counsel for not exploring the subject in more depth and putting the 70-year maximum before the jury is unavailing, because any lawyer worth his salt has to decide which issues to pursue and which to drop. Kirby testified that his principal reason for assisting the prosecution was his friendship with the deceased cab driver; it seems that Burris picked the wrong jailhouse lawyer. An effort to denigrate the role of friendship and play up the role of sentencing concessions could have backfired. The con-

clusion of the state's highest court vindicates his lawyers' decision to direct their energies elsewhere.

We have been leading up to Burris's demonization of his lawyers. Claims of ineffective assistance have become routine. If we are to believe the briefs filed by appellate lawyers, the only reason defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds, and nothing the lawyers do or omit has striking effect. Defendants are entitled to competent counsel not so that they will win every case, but so that the prosecution's evidence and arguments may be put to a rigorous test—so that the legal system gives the innocent every opportunity to prevail. The prospect of this testing also discourages prosecutors from charging the innocent in the first place. Burris's lawyers put the state's case to a test; he had a fair trial.

■ To show that his lawyers were constitutionally deficient, Burris must establish that they performed well below the norm of competence in the profession, and that this caused prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Assistance may be deficient, in the sense that counsel could have done better, without being constitutionally ineffective. Even the best lawyer slips up from time to time. With the benefit of hindsight, judges see how many a lawyer could have acted differently. On the spot, with limited time to explore options, counsel must do the best they can. Only "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" establish deficient performance. *Ibid.* The Supreme Court of Indiana concluded that Burris's lawyers should have done better, but that court also concluded that the evidence against Burris was so powerful that he would have been convicted even if counsel had done better. 558 N.E.2d at 1073. We share that assessment, which means that Burris did not suffer prejudice—a conclusion that avoids any need to explore most of Burris's bill of particulars.

■ In some respects this is obvious. Burris complains that his lawyers did not object when a witness referred to another robbery Burris had committed. Yet other evidence, including the confession to which Kirby testified, informed the jury that Burris had been in prison before, and therefore must have committed other crimes. The marginal effect of an additional robbery had to be slight. Prudent counsel might worry that a parade of objections would lead the jury to infer that the evidence being kept from their view was worse than it was; it is not as if the witness testified to another murder! Cf. *Brecht v. Abrahamson,* 944 F.2d 1363, 1367–68 (7th Cir.1991), affirmed, — U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

■ The most serious charge Burris levels against his lawyers is that they portrayed him in an unsympathetic light. Tom Alsip, one of the two trial lawyers, referred to Burris as "a street person" and continued during closing argument:

> Now then, this is a street people case. We've got a street people defendant. We have almost exclusively street people witnesses.... He's not the best, best one I've ever had, Burris isn't. I don't even like him. He and I have had several arguments. But I'm saying he is entitled ... to everything that anyone else is. By God, I'm going to see that he gets it.

Alsip justified these remarks as an effort to "humanize" the defendant; the Supreme Court of Indiana called them "reprehensible." 558 N.E.2d at 1073. It was principally on account of these remarks that the state court set aside the original death sentence and afforded Burris another penalty proceeding. That court's distinction between guilt and sentence seems to us sound. In assessing guilt the question whether Burris is "a street person" cannot have loomed large; the jury learned about his activities and associates, and may well have reached that conclusion on its own, but it was not relevant to guilt. An assessment of the whole person is decidedly relevant to punishment, however, and a jury who thought the perpetrator an unlikeable "street person" may well have been more willing to see his life terminated.

Everything we have seen of this case suggests that Burris would have been convicted had he been a pillar of the community—though of course the lawyers would have exposed themselves and their client to ridicule by trying to portray him as one. The jury learned from the state's evidence that Burris hung out in unlicensed, after hours bars ("social clubs") with unsavory characters, toted guns despite prior convictions that made it unlawful for him to possess weapons, generally behaved irresponsibly, and had no legitimate income: he robbed the taxi driver to meet a rent payment. Alsip perhaps could have put a better face on this than he did, but the language he used—which conveyed the thought that a person is entitled to a fair trial without regard to his social standing—surely did not affect the verdict of guilt. The judgment of conviction is not vulnerable under § 2254.

AFFIRMED