86 F.3d 1158
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John Williams ADAMS, Petitioner-Appellant,
v.
Kenneth R. MORGAN, Superintendent of Racine Correctional
Institution, Respondent-Appellee.
 No. 95-1599.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 24, 1996.*
Decided May 23, 1996.
 
 Before FAIRCHILD, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 John Williams Adams appeals the dismissal of his petition filed pursuant to 28 U.S.C. § 2254. Adams' petition challenged his May 1984 convictions in Wisconsin state court for one count of second-degree sexual assault, two counts of first-degree sexual assault, and one count of armed robbery. Three teenaged girls were the victims of the assaults, and one of them a victim of the robbery. He was sentenced to a total of fifty years. The district court dismissed the petition, which alleged several grounds, upon preliminary consideration. Adams' ten claims in this appeal repeat most of the grounds alleged in the petition. We will address each, reviewing de novo the district court's conclusions of law and mixed findings of law and fact. Enoch v. Gramley, 70 F.3d 1490, 1496 (7th Cir.1995); Griffin v. Camp, 40 F.3d 170, 172 (7th Cir.1994); see, however, United States v. Baldwin, 60 F.3d 363, 365 (7th Cir.1995) (mixed findings of law and fact are generally reviewed for clear error), petition for cert. filed (U.S. Sep. 5, 1995) (No. 95-5845).
 
 
 2
 The three victims had identified Adams at a lineup. There had been a preliminary examination and another pre-trial hearing where Adams had a right to be present, but waived that right. Thus the three victims did not have an opportunity to see him on those occasions. On cross-examination, defense counsel asked one victim whether the trial was the first time she had seen Adams since the lineup. She responded affirmatively. On cross-examination of Adams, the prosecutor was permitted, over objection, to ask whether Adams had given up his right to be present during the victims' testimony at the preliminary examination. His answer was equivocal, and the prosecutor inquired further and brought out that he was not present. The prosecutor then asked whether Adams kept himself out of the victims' sight so that they wouldn't be able to see him. His answer indicated that the judge had ordered him out, but the prosecutor asked further and Adams testified that no one told him he couldn't be present. The prosecutor then asked, without objection, "You decided not to appear upon advice of your attorney; isn't that right?" Adams answered, "Yes, we agreed to that." The prosecutor further brought out that Adams was absent from the other pre-trial hearing.
 
 
 3
 Adams' first claim on appeal is that his attorney-client privilege, right to counsel, and right against self-incrimination were unfairly burdened when the court permitted the cross-examination just described. Adams points solely to Wis.Stat. § 905.03 when discussing his attorney-client privilege. An error of state law is not cognizable in a § 2254 proceeding. Burris v. Farley, 51 F.3d 655, 659 (7th Cir.1995), and cases cited therein.[1] We see no compulsory self-incrimination in what occurred. Adams chose to testify and opened himself to cross-examination. The prosecutor's questions brought out that Adams had not been present at pre-trial hearings where the victims would be present, permitting an inference that he deliberately avoided being seen by the victims who had identified him at a lineup and would be asked to identify him at trial. As noted by the state appellate court, "The record also indicates that Adams changed his facial hair between the lineup and trial--again to confound identification." State v. Adams, No. 85-1270-CR, slip. op. at 10 (Wis.Ct.App. Apr. 16, 1986).
 
 
 4
 The particular question concerning advice of counsel was not objected to, was an attempt to refute Adams' suggestion that the court ordered him out, and did not ask him to reveal the particulars of any communication. In fact, counsel had informed the judges presiding over the two hearings that Adams waived his right to appear; thus counsel's participation in the waiver, if not his advice, was already on the record. We see no resulting burden on Adams' right to counsel.
 
 
 5
 Adams' seventh claim on appeal is that "Trial counsel was ineffective because he never informed [Adams] that waiver could be used against [Adams] at trial." Appellant's Br. at 31. This is one of the claims on which the district court found procedural default because not raised on direct appeal. The state concedes, however, that the claim had been raised in Adams' second post-conviction motion, which was denied, and the denial affirmed on appeal. State v. Adams, No. 92-0454, slip. op. at 2 (Wis.Ct.App. Oct. 20, 1992). These facts were not brought to the attention of the district court.
 
 
 6
 Because there has been no hearing on this claim, we will assume that Adams' counsel did not warn him that his waiver of presence at the hearings in order to avoid the victims' seeing him could be brought out at trial and an adverse inference contended for. The three incidents occurred December 10, 24, and 26, 1983. The lineup and identification must have occurred shortly afterward. The trial ended in conviction May 18, 1984. Whatever counsel thought about his client's guilt or innocence and whether the lineup identifications were accurate he presumably thought that there was a better chance that one or more of the victims would be unable or unsure in identification at trial if the victims did not observe Adams at hearings held January 9 and March 16, between lineup and trial. He may not have foreseen the prosecution's use of the waivers, or may have thought his objection to bringing them before the jury would be sustained, or may have inadvertently overlooked the possibility of adverse inference. In any event, we are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). We apply that presumption here, and reject the claim of ineffective assistance in advising the strategy of waiver, but omitting a warning of a possible adverse inference. Further, Adams has not claimed that if he had been warned he would have chosen to appear at the hearings, nor has he pointed to any reason to believe that if he had appeared the result would have been different. If the lack of warning were to be considered deficient, Adams would have to show resulting prejudice in order to establish ineffective assistance. Id. at 692.
 
 
 7
 Adams' second claim on appeal is that he was denied the right to present an adequate defense because the trial court refused to permit expert testimony on the reliability of eyewitness identification. As the government notes, none of the cases that Adams cites for this claim was decided on constitutional grounds. See United States v. Downing, 753 F.2d 1224 (3rd Cir.1985); United States v. Smith, 736 F.2d 1103 (6th Cir.) (per curiam), cert. denied, 469 U.S. 868 (1984); People v. McDonald, 690 P.2d 709 (Cal.1984); State v. Chapple, 660 P.2d 1208 (Ariz.1983) (en banc); see also Moore v. Tate, 882 F.2d 1107, 1110 (6th Cir.1989) (per curiam) (noting that none of those cases was decided on constitutional grounds). To the degree that Adams makes a federal constitutional claim, he bases it on the statement in Chambers v. Mississippi, 410 U.S. 284 (1973) that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 302. However, Adams ignores the following sentence in Chambers, that "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt." Id. A state court evidentiary ruling will serve as grounds for a writ of habeas corpus in the rare case where the ruling violates the defendant's right to a fair trial. Lilly v. Gilmore, 988 F.2d 783, 789 (7th Cir.) (citations omitted), cert. denied, 114 S.Ct. 154 (1993). The exclusion of evidence may deny a defendant a fair trial if "the proffered evidence was relevant, material, and vital to the defense," and was excluded arbitrarily. Id. (citations omitted). Adams contends that the expert's testimony was the only way for him to attack the eyewitness identifications. That contention is not plausible, given that Adams had the right to cross-examine the eyewitnesses in order to cast doubt on their ability to identify him. Moreover, the state appellate court decided that there was no abuse of discretion in the exclusion of the expert's testimony. Adams, No. 85-1270-CR, slip. op. at 12-14. Relevancy, particularly of expert testimony, is usually a matter of discretion, see United States ex rel. DiGiacomo v. Franzen, 680 F.2d 515, 519 (7th Cir.1982), and even if the state court holding is not an adequate independent state ground, it fits into the reference in Chambers to established rules of evidence. We conclude that Adams' second claim fails.
 
 
 8
 The district court rejected on the merits Adams' third claim, that comments by the prosecutor in closing argument, suggesting that defendant drove up and down the street lying in wait and went back to his car after the assaults, were not based on evidence and therefore violated Adams' right to a fair trial. However, the state correctly notes that the Wisconsin Court of Appeals rejected the same claim in Adams' direct appeal. The Wisconsin court held that "[b]ecause Adams failed to object to the prosecutor's statements linking the assailant to a car, he waives that argument on appeal." Adams, No. 85-1270-CR, slip. op. at 14-15. The court also concluded in the alternative that there was no prejudice and that a jury instruction was curative. Id. at 15. The holding of waiver, as well as the two alternative conclusions, relied on Wisconsin law. Id. at 14-15, 24. Since the state court based its decision on the independent and adequate state ground of waiver, and since Adams does not attempt to show "cause and prejudice" or "a fundamental miscarriage of justice," we will not review the merits of the claim. Harris v. Reed, 489 U.S. 255, 264-65 & n. 10 (1989); see also Michigan v. Long, 463 U.S. 1032, 1041 (1983).
 
 
 9
 For the same reasons, we will not review the merits of Adams' tenth claim, that the trial court improperly denied his pretrial motion to sever the charges against him. The Wisconsin Court of Appeals, in considering Adams' second motion for collateral relief, held that it would not consider this claim because Adams had failed to raise it in his first state motion for collateral relief. Adams, No. 92-0454, slip op. at 3. Once again, Adams does not attempt to show "cause and prejudice" or a "fundamental miscarriage of justice." This claim, like the third claim, is procedurally barred.
 
 
 10
 Adams' fourth claim is that he was denied a fair trial because the trial court permitted the prosecutor to argue facts not in evidence and to express his personal opinion. On direct examination, Adams testified that one of his teeth was missing, another broken, and the rest decayed. At his attorney's request, Adams' lifted his upper lip to display his teeth to the jury. In closing argument, Adams' attorney attacked the credibility of the victims by pointing out that none of them had noticed Adams' bad teeth. In his rebuttal argument, over objection, the prosecutor commented that he had "been handling this case since late December, ... and I've seen him testify, I've seen him around.... Not until [Adams] lifted up that top lip and had to lift it high to see the bad teeth did I even notice [them]; and it was certainly not the kind of noticeable thing that [the victims] would have inevitably seen that day--that night." Adams cites no federal cases to support his argument that the prosecutor's comments upset the fairness of the trial; he instead cites state cases, which themselves do not rely on federal due process concerns. State v. Albright, 298 N.W.2d 196, 203 (Wis.App.1980); State v. Draize, 276 N.W.2d 784, 789 (Wis.1979); Hoppe v. State, 246 N.W.2d 122, 130 (Wis.1976); State v. Bergenthal, 178 N.W.2d 16, 24 (Wis.1970), cert. denied, 402 U.S. 972 (1971). Putting Adams' brief in its best light, Adams takes issue with the district court's conclusion that the comments did not render the trial fundamentally unfair. The quoted remarks were a mixture. The assertions that the prosecutor had been handling the case for six months, had seen Adams testify, and had not noticed his bad teeth were indeed statements of fact not reflected in the record. The assertion that the bad teeth were not noticeable until Adams lifted his lip high was a fair comment on Adams' appearance and demonstration which had been seen by the jury. We think the statements of fact added nothing of consequence. Even assuming that these comments were somehow unfair, Adams does not indicate any fault in the district court's determination that the instruction to the jury that "remarks of counsel are not evidence" cured the effect of any improper comments of the prosecutor. We conclude that Adams' fourth claim fails.
 
 
 11
 Adams' fifth claim is that the form of the jury instructions permitted a non-unanimous verdict against him in violation of due process. The trial court folded the second and third counts (first-degree sexual assault) into a single set of instructions. The court instructed the jury that before defendant may be found guilty of first degree sexual assault, the state must prove the presence of three elements of this offense. The court described the elements as (1) that defendant had sexual intercourse with Ratzel "and/or" Jackson, (2) that Ratzel "and/or" Jackson did not consent, and (3) that defendant had sexual intercourse with Ratzel "and/or" Jackson by use or threat of use of, in the case of Ratzel a knife and in the case of Jackson a firearm. Adams argues that this formulation using "and/or" confused the jury and did not insure that the jury unanimously made findings on each of the three elements separately on the count involving Ratzel and the count involving Jackson. Adams contends, in effect, that the jury may have unanimously agreed on one or two elements as to one victim, and on the other elements as to the other, but did not agree as to all three elements as to each victim. We have doubt that the jury was misled by the part of the instruction on which Adams relies. In any event we must consider instructions not in artificial isolation, but in the context of the whole charge. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). The trial judge had explained, "I'm only going to read the instruction on first degree sexual assault once, but it applies to the allegations as to each of the victims." The jury was given separate verdict forms for the counts. The judge also instructed, "You must make a finding of guilt or innocence as to each count of the information. Each count charges a separate crime, and you must consider each one separately." Adams, No. 85-1270-CR, slip. op. at 20. We hold the instructions as a whole properly focused the jury on its task.
 
 
 12
 Adams' sixth claim is that Wisconsin's rape shield law, Wis.Stat. § 972.11, violated the Confrontation Clause of the Sixth Amendment at least as applied in denying him a motion for post-conviction relief. The background for this claim overlaps with that for his eighth and ninth claims, and we describe these.
 
 
 13
 Jackson, one of the victims, became pregnant and believed that the intercourse with Adams was the cause although she had other sexual contact a few days before. She so asserted on the record, but not before the jury. The defense moved to exclude any reference to her pregnancy. She wore a winter coat at trial to conceal the fact. After the birth, analyses of blood showed that Adams was not the father. This determination demonstrated that Jackson's belief of paternity was not true, but had no relevance to any issue before the jury, although Adams asserts that it "severely undercut Jackson's identification." Adams brought a motion for post-conviction relief under Wis.Stat. § 974.06, limited largely to challenges on constitutional grounds. The trial court denied the motion, relying in some measure on the rape shield statute.
 
 
 14
 Adams appealed. The appellate court, noting the state's question whether newly discovered evidence can be the basis for a motion under § 974.06, assumed without deciding that the failure to consider newly discovered evidence tending to show lack of guilt would violate due process. Adams, No. 86-1693 (Wis.Ct.App. May 11, 1987). It then went on to conclude that the negative blood test was not material and did not undermine Jackson's identification of Adams and that it is not reasonably probable that a new trial would produce a different result. Because the blood test results did not satisfy the criteria for newly discovered evidence (State v. Boyce, 249 N.W.2d 758, 760 (Wis.1977)), the appellate court did not reach Adams' constitutional challenge to the rape shield statute. The appellate court's reasons for not reaching the constitutional challenge may well be an independent and adequate state law ground, but in any event we agree that the denial of a new trial under these circumstances did not infringe on any constitutional right.
 
 
 15
 Adams' eighth and ninth claims on appeal really merge into one. He asserts that his counsel was ineffective because he did not move, pre-trial, for a continuance so that the tests could be performed, and that counsel's investigation was inadequate without obtaining the tests. Jackson acknowledged a different sexual contact shortly before the assault. It would follow that the assailant might or might not be the father of her child. She believed that the assailant caused the pregnancy, but there is nothing to show that that belief affected her identification of Adams. The blood tests established that her belief was not correct, but in view of her having been exposed to pregnancy by someone else, they did not significantly impeach her identification of Adams. Adams' argument rests upon a fallacy which is apparent from this sentence at page 34 of his brief--"The test results would have shown that the defendant was not the father of the child as she had claimed, and therefore could not have been the person that assaulted her."
 
 
 16
 Counsel did not know, pre-trial, what the tests would prove. The trial was to proceed promptly without the jury knowing of the pregnancy. Counsel's alternative was to ask for a delay which might or might not have been granted. He would be relying on the mere chance that the tests would exclude Adams. If they did, counsel could bring before the jury that the pregnancy occurred and that Adams was not the father. He would presumably have to deal with Jackson's testimony that she had intercourse with someone else. Choosing to proceed was, in our opinion, well within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.
 
 
 17
 Since Adams has not explained why the failure to obtain the evidence led to a "fundamentally unfair or unreliable" result at his trial, his two claims of ineffective assistance with respect to that evidence cannot succeed. Williams v. Washington, 59 F.3d 673, 682 (7th Cir.1995) (citing Lockhart v. Fretwell, 113 S.Ct. 838, 842-43 (1993)).
 
 
 18
 The judgment is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Throughout his brief on appeal, Adams makes claims partially or completely based on state law. To the extent that his claims are based on state law, they are not cognizable. Burris, 51 F.3d at 659