Peter T. **EDELBACHER,**
Petitioner–Appellant,

v.

Arthur **CALDERON, Warden,**
Respondent–Appellee.

No. 97–16947.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1998.

Decided Nov. 18, 1998.

Quin Denvir, Federal Defender, Mark E. Cutler, Assistant Federal Defender, Sacramento, California, for petitioner-appellant.

Mark Anthony Johnson, Deputy Attorney General, Sacramento, California, for respondent-appellee.

Before: SNEED, HALL, and RYMER, Circuit Judges.

SNEED, Circuit Judge:

Petitioner Peter T. Edelbacher ("petitioner") appeals from a judgment of the United States District Court for the Eastern District of California, Judge Robert E. Coyle, dismissing his petition for writ of habeas corpus. On appeal, petitioner argues that we are bound by *Phillips v. Vasquez,* 56 F.3d 1030 (9th Cir.1995). The narrow holding in *Phillips* does not control this case. When there

is a pending state penalty retrial and no unusual circumstances, we decline to depart from the general rule that a petitioner must await the outcome of the state proceedings before commencing his federal habeas corpus action.

We affirm the judgment below.

## I.

### BACKGROUND

Pursuant to his conviction for first degree murder, petitioner is currently in the custody of the California Department of Corrections at San Quentin State Prison. Arthur Calderon is Warden at San Quentin State Prison and Tom Maddock is Director of the California Department of Corrections (collectively, the "State").

On March 31, 1983, following a trial in California Superior Court for the County of Fresno, a jury convicted petitioner of first degree murder with special circumstances. The court sentenced him to death two months later.[1] On January 23, 1989, the California Supreme Court affirmed petitioner's conviction, but reversed the death sentence and remanded the matter for retrial of the penalty phase. *People v. Edelbacher,* 47 Cal.3d 983, 254 Cal.Rptr. 586, 766 P.2d 1 (Cal.1989).

On October 15, 1991, while awaiting retrial on the proper penalty, petitioner filed a petition for writ of habeas corpus in the California Superior Court for the County of Fresno which challenged the validity of his guilt conviction on the ground that his lawyer's failure to investigate the issue of insanity constituted ineffective assistance of counsel.

On February 23, 1993, after a three-month evidentiary hearing, the superior court issued a writ which granted relief to allow petitioner to enter a plea of not guilty by reason of insanity and to afford him the opportunity to have a separate trial on that issue. The State promptly appealed this grant of partial habeas relief. On December 15, 1995, the Court of Appeal of the State of California,

Fifth Appellate District, reversed the superior court judgment.

One month later, petitioner filed for review in the Supreme Court of California. On March 14, 1996, California's highest court denied the petition. On June 12, 1996, petitioner then filed a petition for writ of certiorari in the United States Supreme Court which was denied on March 17, 1997.

At this point, petitioner had exhausted his remedies in state court with respect to guilt, but not with respect to the proper penalty. Petitioner, after having litigated the insanity issue in the state courts and the United States Supreme Court for approximately six years, next sought federal relief from his conviction by filing petition for writ of habeas corpus in the United States District Court for the Eastern District of California on April 23, 1997. Petitioner relies on *Phillips, supra.* The State contends that petitioner's writ petition is premature pending the completion of his penalty phase retrial in state court, as required by the California Supreme Court's ruling in 1989.

On July 2, 1997, District Court Judge Coyle granted the State's motion to dismiss. Petitioner filed timely notice of appeal from that order on July 28, 1997. We now affirm the judgment of the district court.

## II.

### STANDARD OF REVIEW

We review de novo the district court's order dismissing a habeas corpus petition. *See Fields v. Calderon,* 125 F.3d 757, 759 (9th Cir.1997). Findings of fact below are scrutinized for clear error. *See Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991).

## III.

### DISCUSSION

We must decide whether petitioner can challenge in federal court his state conviction of guilt when he has exhausted all potential state remedies with regard to his guilt, but not his sentence, the retrial of

1. The State of California bifurcates the process for adjudicating guilt and imposing a death sentence. Thus, the death sentence is imposed

through an entirely separate trial. *See* CAL. PENAL CODE § 190.1 (West 1988); *See also Phillips,* 56 F.3d at 1032.

which is proceeding in the state court.[2] Petitioner contends that *Phillips, supra,* controls our decision because, according to him, "the facts are virtually identical" to his case. We disagree.

In *Phillips,* petitioner was convicted of first degree murder with special circumstances in 1980, and subsequently sentenced to death. *Phillips,* 56 F.3d at 1032. Five years later, on automatic appeal, the Supreme Court of California affirmed Mr. Phillips' guilt conviction but reversed his death sentence. *See id.* In 1992, following the retrial of the death penalty, Phillips was again sentenced to death. *See id.* He filed his automatic appeal of the renewed death sentence in the California Supreme Court in 1993. *See id.* In 1995, while that state appeal was pending, this Court permitted Phillips to seek habeas relief in federal court challenging his guilt conviction. *See id.* Thus, in *Phillips,* the petitioner's penalty phase retrial had taken place and he had received a new sentence of death before the federal petition was even filed.

That is not the situation in this case. In 1983, to repeat, petitioner was convicted of first degree murder with special circumstances. The court sentenced him to death two months later. In 1989, on automatic direct appeal, the Supreme Court of California affirmed petitioner's conviction of guilt, but reversed his death sentence. In 1991, while awaiting retrial on the death penalty issue, petitioner challenged in state court his conviction of guilt on the grounds that counsel failed to properly investigate the insanity defense. Petitioner's challenge of his conviction was ultimately denied by the California Supreme Court and the United States Supreme Court declined to issue writ of certiorari. Thus, by the time petitioner filed his habeas petition in federal court, he had exhausted his remedies in state court with respect to the issue of guilt.

However, petitioner had not, at that time, exhausted his *penalty phase* proceedings in

state court. Petitioner's death penalty retrial mandated by the California Supreme Court *had not yet commenced.* In *Phillips,* the penalty retrial had *concluded* and Phillips had again been sentenced to death *before* the commencement of his habeas action in federal court seeking relief from his guilt conviction. Here, on the other hand, there is no penalty, death or otherwise, that is currently imposed upon petitioner. The determination of the proper penalty is currently before the state court.

Petitioner insists that *Phillips* did not turn on the existence of a death penalty or conclusion of the retrial, but rather on *the length of the delay without federal review of the guilt verdict.* The State, on the other hand, insists that *Phillips* turned on the unusual circumstances rather than the length of delay and, in any event, does not apply in the absence of a state court judgment in the penalty phase. We agree with the State's position that *Phillips* does not control this case.

The circumstances in this case differ from *Phillips* in several material respects: (1) a retrial of the penalty phase in state court is ongoing; (2) there is no assignment of the necessary capital or non-capital status in this case; (3) there are no "unusual circumstances" which might suggest that "no end is in sight" to the state court proceedings and (4) the delay in question is not attributable to an "ineffective" state process, but primarily to the extended proceedings relating to the guilt issue. We shall address each of these circumstances.

A. *Penalty Phase is Ongoing in State Court.*

Petitioner was found guilty and sentenced to death in 1983. The California Supreme Court reversed the death sentence and remanded the matter for retrial of the penalty phase in 1989. *People v. Edelbacher,* 47 Cal.3d 983, 254 Cal.Rptr. 586, 766 P.2d 1. The retrial is ongoing in superior court.[3] In

2. Such questions are inevitable in a judicial system which bifurcates the trial into guilt and penalty phases.

3. On October 2, 1998, Deputy Attorney General, Mark A. Johnson, informed the Court by way of

affidavit that the penalty phase retrial in *People v. Edelbacher,* Superior Court for the County of Fresno case number 281252-7, is currently underway.

*Phillips*, to repeat, the penalty phase retrial had already concluded. Although an *appeal* therefrom was ongoing, there existed a judgment imposing the death penalty at the time Phillips filed for relief in federal court from his conviction of guilt.

Petitioner contends that this difference is of no consequence. He argues that while it is true that he might not be sentenced to death in his ongoing retrial, it was equally true that Phillips might not have been sentenced to death in his then-ongoing appeal.

Petitioner overlooks a fundamental difference between the *Phillips* case and his own. In *Phillips*, the focus was upon the ineffective state process which resulted in an unreasonably long delay between the verdict of guilty and the resolution of whether the penalty of death was appropriate. It took fifteen years to resolve the latter. *Phillips*, 56 F.3d at 1035. This case is different. Here the delay is attributable to the petitioner's quite legitimate efforts in state court to escape guilt on grounds of insanity. The district court recognized the distinction between this case and *Phillips* and properly held that absent an ineffective state process or other extraordinary circumstances, the state must be allowed, at a minimum, to conclude its penalty phase proceedings within a reasonable time before the federal courts entertain a habeas action challenging petitioner's conviction.

We agree with the district court's holding that it should not entertain petitioner's federal habeas petition in the absence of a penalty phase judgment in state court or until the existence of extremely unusual circumstances warrant an exception.

### B. *Ambiguity with Respect to Capital/Non-Capital Status.*

Our conclusion is strengthened by the fact that the federal procedural posture in a habeas corpus action is dependent upon the classification of the case as "capital" or "non-capital." Absent a state court penalty designation of "capital" or "non-capital," it is not possible to determine which federal procedures to apply in a habeas action.

The State contends that the federal court cannot proceed in the face of such procedural ambiguity, because duplicative proceedings, confusion and judicial inefficiency could result. Petitioner, on the other hand, argues that the procedural ambiguity actually presents no problems. Petitioner insists that the same procedural ambiguity existed in *Phillips*. We disagree. In *Phillips*, we were able to assign "capital" status to the case because a state death sentence already existed. Although that death sentence could have been overturned on appeal, we held that Phillips deserved immediate federal review of his guilt because of the extreme delay in the evaluation of his penalty by "ineffective" state courts. In this case the state process is neither ineffective nor indefinitely delayed. Moreover in this case, there is no underlying sentence and thus, no way to designate the case as "capital" or "non-capital."

Petitioner insists that there are no differences between capital and non-capital procedures "that might actually present a problem." Again, we disagree. The Supreme Court has repeatedly held that the death penalty is qualitatively different from all other punishments and that the severity of the death sentence mandates heightened scrutiny in the review of any colorable claim of error.[4]

Petitioner contends that we can avoid any potential confusion by simply assigning the case capital or non-capital status or instead allowing him to designate one or the other. We reject this suggestion. Were a petitioner

---

4. *See Ford v. Wainwright*, 477 U.S. 399, 411, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (J. Marshall, plurality) ("In capital proceedings generally, this Court has demanded that fact-finding procedures aspire to a heightened standard of reliability.... This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different."); *accord Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983); *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). Moreover, prisoners in state custody subject to a capital sentence are afforded numerous other procedural guarantees such as the mandatory appointment of counsel and greater compensation for counsel, investigators, and experts. *See* 28 U.S.C. § 2261; *Edelbacher v. Calderon*, Order, No. CIV. F–97–5401–REC–P (E.D.Cal., July 2, 1997) at 4.

permitted to elect "capital" procedures, we would risk wasting our judicial resources by affording him undeserved privileges which are costly and time-consuming. On the other hand, were he allowed to elect less stringent procedures and sentenced to death, he would complain that he was not afforded the standard capital procedures. We should not further complicate our procedures in such a manner.

### C. No "Unusual Circumstances" Such That "No End is in Sight."

Petitioner contends that in this case, as in *Phillips*, there are "unique circumstances" that warrant federal review of his guilt conviction prior to the conclusion of the penalty phase retrial in state court.[5] In *Phillips*, the circumstances were indeed unusual. There, the death sentence on appeal in state court was already several years old. *See Phillips*, 56 F.3d at 1032. Moreover, it appeared that Phillips' appeal from his sentence might not have been decided for some time "due to significant problems involving inaccuracies in the sentencing trial transcript." *Id.* In *Phillips* there was "no end in sight" to the state penalty proceedings. *Id.* at 1038.[6] We noted that the state proceeding could have lasted "an indefinite period of years (quite possibly 20 or more)." *Id.* at 1036.

Here, the circumstances are much less extreme. There is no indication that the state court has been ineffective. Nor has the state court in this case experienced any problems regarding the sentencing trial transcript. As the district court noted, "the anticipated delay is not the open-ended time avoided by the Ninth Circuit in *Phillips*" because the state

retrial will only last a "matter of months, not years." *Edelbacher v. Calderon*, Order, No. CIV. F–97–5401–REC–P (E.D.Cal., July 2, 1997) at 3. Moreover, the guilt phase has been completed and the penalty phase retrial is already underway in state court.

### D. Delay Not Attributable to "Ineffective" State Process.

▇ Petitioner broadly claims that the "delay" in this case, without regard to its cause, is sufficiently extreme as to place this case within the ambit of the *Phillips* holding. We disagree. It is true that "extreme" or "unusual" delays in the state courts can justify a decision to conduct an immediate federal review. However, those holdings are limited to cases where the delay is attributable to the state rather than to the individual. *See Phillips*, 56 F.3d at 1035–36 (concluding that the delay in that case had rendered the state corrective process "ineffective" within the meaning of 28 U.S.C. § 2254(b) (1998)); *accord Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir.1990); *Okot v. Callahan*, 788 F.2d 631, 633 (9th Cir.1986).

The Seventh Circuit, in *Burris v. Farley*, 51 F.3d 655, 658 (7th Cir.1995), summarized this principle in a colorful fashion: "When a state handles his case in glacial fashion, a prisoner need not wait for global warming to set in . . . . before being entitled to present to a federal court his challenge to the judgment of conviction." "Glaciation" in the state court did not occur in this case. Petitioner suggests that he is partially to blame for the delay. He states that it was "in [the] mutual interest [of the prosecutor and the petitioner] to delay the probably lengthy and possibly

---

**5.** "We have consistently recognized that unusual delay in the state courts may justify a decision to protect a prisoner's right to a fair and prompt resolution of his constitutional claims despite the jurisprudential concerns that have led us to decline to review a claim or to require full exhaustion in other cases in which a proceeding related to the federal petition is pending in state court." *Phillips*, 56 F.3d at 1035 (citing *Coe v. Thurman*, 922 F.2d 528 (9th Cir.1990) and *Okot v. Callahan*, 788 F.2d 631 (9th Cir.1986)); *see also Hamilton v. Calderon*, 134 F.3d 938, 939 (9th Cir. 1998) (holding that *Phillips* did not apply in the absence of "extreme delay" by the California Supreme Court); *Drury v. Cox*, 457 F.2d 764, 764–65 (9th Cir.1972) ("Our reading of *Younger v. Harris* convinces us that only in the most

unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts. Apparent finality of one issue is not enough.") (citation omitted).

**6.** "We are convinced, however, that fifteen years, *with no end in sight*, is simply too long a period to require a prisoner to await review of what might be an unconstitutional conviction, merely because an entirely separate and independent review of his sentence has not been resolved in a timely fashion." *Phillips*, 56 F.3d at 1038 (emphasis added).

unnecessary penalty retrial while the validity of the guilt verdict was being determined." In other words, the delay from which petitioner seeks relief actually had its source in the various quite legitimate and proper appeals and rehearings which he sought and obtained.

The delay in this case was not extreme, unusual or attributable to the ineffectiveness of the state courts. It differs from that in *Phillips* and is insufficient to constitute grounds for immediate federal review, particularly in light of the longstanding principles underlying the Supreme Court decision in *Younger v. Harris*, 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). As *Younger* makes clear, our federal judiciary, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. 746. Under these circumstances, the principles of comity strongly suggest that the courts of California be given the opportunity to determine the proper sentence to be imposed upon the petitioner.

For the above-stated reasons, we AFFIRM the district court's order dismissing petitioner's federal habeas corpus petition.