# IN THE COURT OF APPEALS OF IOWA

No. 17-0674
Filed April 4, 2018

**SHATANI BUCK JR.,**
       Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
       Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Ian K. Thornhill,

Judge.

Shatani Buck Jr. appeals from the denial of his application for postconviction

relief. **AFFIRMED.**

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge**

Ignoring his own misconduct, Shatani Buck Jr. blames his current plight on his plea counsel and asks that his felon-in-possession-of-firearm conviction be tossed. We affirm the district court's denial of Buck's application for postconviction (PCR) relief.

In December 2012, Buck was charged by trial information with Count I, felon in possession of a firearm, in violation of Iowa Code section 724.26(1) (2012), a class "D" felony; Count II, carrying weapons, in violation of section 724.4(1),[1] an aggravated misdemeanor; and Count III, possession of marijuana, in violation of section 124.204(4)(m), a serious misdemeanor. Buck bonded out and was released to the supervision of the Iowa Department of Correctional Services (DCS). An April 2013 pretrial report of violation indicated Buck had not reported to DCS since early January and that he had picked up another drug possession charge. Buck's pretrial release was rescinded, and he was rearrested.

Buck and the State reached a plea agreement. The agreement called for Buck to plead guilty to Counts I and II. In exchange for these guilty pleas, the State would recommend a deferred judgment be awarded on Count I with three years of supervised probation and a suspended civil penalty. For Count II, the agreement was for the State to recommend 365 days in jail with all but forty-six days being suspended, two-year's supervised probation, and credit for twenty-five days

---

[1] Iowa Code § 724.26(1) (2012) provides: "A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony." Buck was previously adjudicated delinquent of the offense of burglary in the third degree, an offense that would constitute a felony if committed as an adult.

already served. The minimum fine would also to be suspended. Count III would be dismissed at Buck's cost. Additionally, the agreement called for the new drug possession charge to be dismissed at Buck's cost. Finally, the agreement called for Buck's release from custody to the supervision of DCS pending sentencing on Count I after he completed serving the unsuspended portion of the jail sentence imposed on Count II.

In May 2013, Buck filed a written guilty plea to Count II, the carrying-weapons offense, and was sentenced consistent with the provisions of the plea agreement. The same day, in open court, Buck also pled guilty to Count I, the felon-in-possession-of-firearm offense. A presentence investigation (PSI) report was subsequently prepared. The PSI report recommended Buck be given a suspended prison sentence. This recommendation was based, in part, upon Buck's extensive juvenile and adult criminal history, despite his young age, as well as the fact that Buck had not been compliant during his period of pretrial release.

In September 2013, Buck was sentenced on Count I, the felon-in-possession-of-firearm offense, and despite the PSI recommendation, Buck was granted a deferred judgment. Three days later, Buck violated the terms of his probation on Count II. Buck admitted his misconduct, and he was sentenced to ninety days in jail and remained on probation.

In March 2015, the State sought to revoke Buck's deferred judgment, alleging Buck had missed and failed drug tests from August 2014 through January 2015, and alleging new criminal conduct by Buck. At a May 2015 hearing, Buck admitted he had violated the terms of his probation under Count I. The district court revoked Buck's deferred judgment, adjudicated him guilty of the felon-in-

possession-of-firearm offense, sentenced him to an indeterminate term of incarceration not to exceed five years, suspended incarceration, and—yet again—placed Buck on probation. In August 2015, after additional and repeated violations of his probation, Buck's probation was revoked and he was sent to prison to serve the term of incarceration the court had suspended the previous May.

In January 2016, Buck filed a pro se application for PCR relief. His PCR counsel filed an amended application in April 2016. Buck alleged his defense counsel, Edward Leff, failed to adequately consult with him "regarding possible defenses, trial strategy, penalties and other matters" and that, as a result, his plea was unknowing and involuntary. After a February 2017 trial, the district court denied Buck's PCR application. Buck appeals.

The sum and substance of Buck's argument on appeal is:

> In this case, prior to the acceptance of the plea offer and entry guilty plea, trial counsel did not communicate effectively with the appellant to understand the appellant's concerns involving the charges. In addition, trial defense counsel did not effectively communicate with the appellant regarding the plea offer and its impacts. Further, prior to accepting the plea offer and entering the guilty plea, trial defense counsel did not effectively communicate with the appellant the significance and operation of the plea offer and entry of a guilty plea. As a result, due to the ineffective communications with the appellant and lack of time and attention to the defense of the appellant, the appellant unknowing[ly] and involuntarily entered a guilty plea and accepted the plea offer at issue.

Our review of ineffective-assistance-of-counsel claims is de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Ineffective assistance is shown by establishing counsel breached an essential duty that resulted in prejudice. *See id.*

At the PCR trial, Buck testified attorney Leff did not spend the required time and effort to understand the facts of his case and consult with him to understand his position as to defense strategy in obtaining a plea deal.[2] He said it was hard to make contact with Leff by telephone. He testified he agreed to the deal because it was important to keep an adult felony conviction off his record. He claimed that, if he knew prior to his guilty plea what he knows now, he would not have taken the plea offer and pled guilty. He did not elucidate what "he knows now." He just "felt" Leff could have done a better job at getting a better result.[3]

Leff testified regarding his consultations with Buck. It was his understanding that Buck's main concern was keeping a felony conviction off his record. After a review of the evidence, including Buck's admissions to the police, Leff concluded there was a substantial likelihood Buck would be convicted of all three charges if they went to trial. His primary goal, consistent with Buck's wishes, was to find a resolution that maximized the chances of Buck avoiding an adult felony conviction.

The PCR court observed:

> Attorney Leff further testified that he saw no valid basis to file a suppression motion and felt that the filing of a baseless motion would jeopardize the plea offer. When [Buck] was charged with an additional possession of controlled substance offense in April 2013, Attorney Leff was concerned the outstanding plea offer would be revoked. Attorney Leff also felt that pushing any harder for concession on Count I would have jeopardized the State's offer to recommend a deferred. Attorney Leff did continue to negotiate prior to the final deal being reached and was able to reduce the amount of jail time the State would accept on Count II. Furthermore, Attorney

---

[2] At his guilty plea hearing, Buck assured the court he was satisfied with the advice and services he had received from his attorney.

[3] "When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (citations omitted).

Leff successfully negotiated a dismissal of the new possession of controlled substance charge as part of the overall plea agreement. After the plea hearing, [Buck] never requested a motion in arrest of judgment be filed. Finally, at sentencing, Attorney Leff was able to secure a deferred judgment on Count I although the DCS had recommended adjudication in the PSI.

Essentially, Buck faults Leff for not performing a miracle. *See* Greta Van Susteren, *Responsibility of A Criminal Defense Attorney,* 30 Loy. L.A. L. Rev. 125, 126 (1996) ("The convicted prisoners' standard for effective assistance of counsel is usually equal to a miracle worker—in other words, a standard that cannot be met by mere mortals . . . . Clients have been known to demand that their lawyers make a silk purse out of a sow's ear."). "But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds, and nothing the lawyers do or omit has striking effect." *Burris v. Farley*, 51 F.3d 655, 662 (7th Cir. 1995).

In denying Buck's application, the PCR court concluded:

The Court finds wholly incredible [Buck]'s claim that he would have not entered a guilty plea had he known then what he knows now. Attorney Leff obtained exactly the outcome [Buck] wanted, that is, an opportunity to keep a felony conviction off his record. Given the circumstances of the offense, the considerable amount of credible evidence against him, and [Buck]'s prior criminal history, the outcome obtained by Attorney Leff was remarkable. Even more remarkable about Attorney Leff's outstanding representation in [Buck]'s criminal case is that [Buck] obtained yet another criminal charge while his felony matter was pending. Not only did [Buck's counsel] successfully avoid having [Buck]'s pretrial conduct jeopardize the plea agreement with the State, Attorney Leff was able to achieve a dismissal of the new charge as part of the same plea deal.

The fact that [Buck] was unwilling and/or unable to abide by the simple terms of his probation, on multiple occasions, after receiving a deferred judgment, in no way renders his guilty plea involuntary or unintelligent. Moreover, although the Court has ruled this application fails on the prejudice prong of the *Strickland* test, the Court finds nothing about Attorney Leff's representation of [Buck] to

be deficient. Both Attorney Leff and [Buck] testified that [Buck]'s paramount concern in the plea negotiations was keeping a felony conviction off of [Buck]'s record. Attorney Leff successfully negotiated an agreement with the State that bound the State to recommend a deferred judgment. Attorney Leff also successfully advocated to the sentencing Court that a deferred judgment was an appropriate disposition despite [Buck]'s criminal record and a contrary recommendation by DCS. The fault for losing the benefits of a deferred judgment falls squarely on [Buck], not his counsel.

After a de novo review of the record, we wholeheartedly agree, and accordingly affirm the PCR court's denial of Buck's PCR application.

**AFFIRMED.**