Gary BURRIS, Petitioner–Appellant,

v.

Al C. PARKE, Respondent–Appellee.

No. 97–1218.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1997.

Decided June 19, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 13, 1997.*

Alan M. Freedman (argued), Freedman & Bornstein, Chicago, IL, for Gary Burris.

Geoffrey Slaughter (argued), Jeffrey A. Modisett, Office of the Attorney General, Indianapolis, IN, for Al C. Parke.

Jeffrey A. Modisett, Indianapolis, IN, for Pamela Carter.

* Judge Cudahy voted to grant rehearing. Judge Rovner voted to grant rehearing en banc.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Six appellate opinions—three by this court and three by the Supreme Court of Indiana—lay out the history of this capital case. *Burris v. Parke*, 95 F.3d 465 (7th Cir.1996) (en banc); *Burris v. Parke*, 72 F.3d 47 (7th Cir.1995); *Burris v. Farley*, 51 F.3d 655 (7th Cir.1995); *Burris v. State*, 642 N.E.2d 961 (Ind.1994); *Burris v. State*, 558 N.E.2d 1067 (Ind.1990); *Burris v. State*, 465 N.E.2d 171 (Ind.1984). Briefly told, the tale so far is this. Burris was convicted of murder and sentenced to death. On direct appeal the Supreme Court of Indiana affirmed. Burris filed a collateral attack in Indiana. That state's highest court eventually concluded that Burris's lawyer had not represented him well enough at sentencing and ordered a new punishment trial, although the court adhered to its conclusion that the adjudication of guilt was sound. Counsel at the second sentencing persuaded at least one juror not to support capital punishment—but in Indiana a sentencing jury is advisory, see *Schiro v. Farley*, 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), so the judge dismissed the jurors and conducted an additional hearing, after which she sentenced Burris to death.

While pursuing appellate remedies within Indiana, Burris filed a petition under 28 U.S.C. § 2254 limited to the determination of guilt. The district court denied this petition, and we affirmed. Meanwhile, the Supreme Court of Indiana affirmed the second death sentence and Burris filed a new collateral attack in state court, arguing that he had received ineffective assistance of counsel in the second penalty phase. Although this was the initial collateral challenge to the second sentence, it was a "successive" petition under state practice given his collateral attack on the determination of guilt and the first death sentence. Indiana requires prisoners to obtain the approval of the Supreme Court for successive petitions, see Rule 1 § 12 of the Indiana Rules for Post–Conviction Remedies, so the state's trial judge declined to consider the petition. Burris applied to the Supreme Court of Indiana for leave to prosecute this collateral attack. After a series of skirmishes, the court entered a unanimous order that, apart from formal matters, reads in full:

> Burris now claims his counsel was ineffective in connection with his sentencing, primarily because certain facts were not presented as part of his mitigation strategy. He asserts these facts should be considered in a successive post-conviction proceeding. The Court has reviewed these claims and the materials submitted in support of them. Though pled as an ineffective assistance claim, Burris's contentions are essentially an assault on the adequacy of the mitigating evidence submitted on his behalf, an issue we have already examined twice. We find that these claims are either barred by the doctrine of *res judicata* or otherwise barred by the Indiana Rules of Procedure for Post–Conviction Relief.

> The Court determines that the "pleadings conclusively show that the petitioner is entitled to no relief." Ind. P–C.R. 1 § 12(b). Accordingly, the Court declines to authorize the filing of a successive petition for post-conviction relief.

Burris then began a second federal collateral attack, which the district court dismissed as an abuse of the writ. A panel of this court affirmed, observing that Burris had deliberately excluded sentencing issues from his first petition. While the case was pending before the court en banc, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which replaced the doctrine of abuse of the writ with a more restrictive rule. See 28 U.S.C. § 2244(b). After another round of briefs and oral argument, this court held that Burris's current petition is "second or sequential" within the meaning of both old and new federal doctrines even though it is his first federal challenge to the second death sentence. Nonetheless, we held, first, that the new § 2244(b) does not apply to Burris because, when selecting issues for his first petition, he may have relied on the older standards; and, second, that the attorneys representing Indiana had forfeited any right to the benefits of those standards by acquiescing in Burris's efforts to divide his arguments into multiple petitions.

On remand, the district court denied the petition. 948 F.Supp. 1310 (1996). It concluded that 28 U.S.C. § 2254(e), added by the AEDPA, applies to Burris's claims in light of *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), cert. granted, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997), which holds that changes made by the AEDPA govern pending litigation unless the petitioner can show detrimental reliance on the former law, as Burris did concerning § 2244(b). 948 F.Supp. at 1319–22. Accord, *Pitsonbarger v. Gramley,* 103 F.3d 1293, 1298–99 (7th Cir.1996). Section 2254(e)(1), which says how federal courts must treat the findings of state courts, is irrelevant because Indiana did not make findings of fact concerning Burris's current contentions. Section 2254(e)(2), which governs the holding of federal evidentiary hearings, is potentially more important. It reads:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The district judge wrote that Burris would have received an evidentiary hearing under the law predating the AEDPA, 948 F.Supp. at 1322–23, but that § 2254(e)(2) precludes a hearing because Burris "failed to develop the factual basis of a claim in State court"—a phrase that the judge understood to refer to *any* shortcomings in the record, no matter who was responsible. 948 F.Supp. at 1324–

27. Burris did not build a factual record in state court; as the judge saw things, that was conclusive unless Burris could satisfy the further conditions in § 2254(e)(2). One of these is that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." We have held that identical language in § 2244(b)(2)(B)(ii) refers unambiguously to the offense of conviction and does not permit proceedings concerning the sentence. *Hope v. United States,* 108 F.3d 119 (7th Cir.1997). It follows that Burris could not obtain a hearing under the standards of § 2254(e)(2). Acting on the basis of Burris's allegations, untested by an evidentiary hearing, the court concluded that he received constitutionally effective legal assistance. 948 F.Supp. at 1327–43. The court also rejected some additional contentions that have not been renewed on appeal. *Id.* at 1343–55.

*Pitsonbarger* reserves the question whether the miscarriage-of-justice language in § 2254(e)(2)(B), restricted as it is to innocence of "the underlying offense", applies when proceedings in state court predated the AEDPA. 103 F.3d at 1306–07. Avoidance is equally appropriate today, for two reasons. First, § 2254(e)(2) does not matter to this case; second, an evidentiary hearing would have been unnecessary under the former law. Section 2254(e)(2) does not matter because it applies only when "the applicant has failed to develop the factual basis of a claim in State court proceedings". "Failure" implies omission—a decision not to introduce evidence when there was an opportunity, or a decision not to seek an opportunity. The AEDPA differs from former law, see *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), by not asking whether that omission is a default under state practice in the sense that it would prevent the prisoner from obtaining a hearing in state court. Section 2254(e)(2) is a rule of federal law, liberated from the independent-and-adequate-state-grounds doctrine on which *Keeney* rests. See *Lambrix v. Singletary,* —— U.S. ——, —— - ——, 117 S.Ct. 1517, 1522–23, 137 L.Ed.2d 771 (1997). To be attribut-

able to a "failure" under federal law the deficiency in the record must reflect something the petitioner did or omitted. Like the third circuit, see *Love v. Morton*, 112 F.3d 131 (3d Cir.1997), we think that the word "fail" cannot bear a strict-liability reading, under which a federal court would disregard the reason for the shortcomings of the record. If it did, then a state could insulate its decisions from collateral attack in federal court by refusing to grant evidentiary hearings in its own courts. Nothing in § 2254(e) or the rest of the AEDPA implies that states may manipulate things in this manner. But, for the reasons that follow, we think that a federal evidentiary hearing is unnecessary even under the standard of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), which *Keeney* overruled in part and which § 2254(e) supersedes.

■ Three experienced criminal lawyers represented Burris at the second penalty proceeding. They presented substantial evidence in mitigation, attempting to establish first that Burris's brutal conduct may have been attributable to a hard childhood, and second that Burris has reformed while in prison. To support the first proposition, counsel introduced evidence that Burris was abandoned as an infant, grew up in brutal surroundings, did not know his parents or even his age, and served while a pre-teen as a "gofer" in a whorehouse, falling into a criminal culture that dominated his life. To buttress the second proposition, counsel produced prison guards and caseworkers who testified that Burris is bright, a good conversationalist, and a provider of legal assistance to other prisoners. The mitigation evidence persuaded at least one juror.

Burris's current lawyers insist that this defense fell below the constitutional minimum for three reasons: first, counsel did not investigate the possibility that Burris suffers from brain damage; second, counsel did not succeed in introducing evidence that Burris blamed himself for the death (by heart attack) of the woman who was most responsible for his upbringing; third, counsel did not argue on appeal that the disagreement among the jurors is a mitigating circumstance the judge was obliged to consider.

None of these arguments requires further evidentiary exploration; none calls counsel's performance into question.

Start with the first. Burris wanted the district court to appoint a neuropsychologist to investigate him and opine at a federal evidentiary hearing whether he suffers from a brain injury that contributed to his vicious conduct. Such an appointment is possible if the expert services "are reasonably necessary for the representation of the defendant". 21 U.S.C. § 848(q)(9), applied by § 848(q)(4)(B) to capital cases in which relief is sought under § 2254. To establish that a service is "reasonably necessary," the defendant must make a preliminary showing, which Burris has not done. His current lawyers suspect—more accurately, believe that his former lawyers should have suspected—that a bullet to the head in the 1970s damaged Burris's brain. All that the record shows, however, is that Burris complains of headaches, which plague many people without brain damage. After his arrest, Burris was examined by two psychiatrists. Their 1981 report describes the gunshot wound as "superficial" and concludes that Burris displays "no indications of mental illness or deficiency". Before the second penalty proceeding, Burris's lawyers arranged for another mental examination; a psychologist interviewed and examined Burris in 1991 and concluded that he shows no signs of brain damage or dysfunction. Counsel meanwhile found witnesses to testify that Burris is alert, intelligent, a good conversationalist and jailhouse lawyer, and so on. *None* of the evidence available at the time suggested the utility of further mental examinations, and counsel therefore cannot be called incompetent under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

What a neuropsychologist might turn up today is irrelevant; so is the fact that the psychologist who examined Burris in 1991 now wants to investigate the potential effects of the bullet. The performance of counsel is assessed by what was known at the time or would have been discovered through diligent pursuit of lines of inquiry reasonable at the time; this was not such a line, given the

multiple mental exams ending in clean bills of mental health and the fact that lay witnesses likewise detected no mental problems. *Brewer v. Aiken*, 935 F.2d 850 (7th Cir.1991), on which Burris relies, is a different kettle of fish. Both medical and lay observers recognized that Brewer was severely impaired, but counsel did not explore the subject and put on essentially no defense. Burris's lawyers did investigate. What is more, counsel could not have developed a brain-damage theory without risk of undercutting the evidence of Burris's turnaround in prison, and without opening up the possibility that a jury would conclude that Burris was undeterrable. As we observed in *Stewart v. Gramley*, 74 F.3d 132 (7th Cir.1996), jurors may not be impressed with the idea that to know the cause of viciousness is to excuse it; they may conclude instead that, when violent behavior appears to be outside the defendant's power of control, capital punishment is appropriate to incapacitate. Counsel avoided this potential pitfall; their performance was well in excess of the constitutional floor.

Next comes the contention that counsel failed to inform the jury that Burris blames himself for the death of the woman who the current lawyers refer to as "his primary caregiver"—although his upbringing does not meet the normal definition of "care". Counsel tried to adduce this information by asking the psychologist what Burris had told him about the subject. The question was met with a hearsay objection, which was sustained. What more could counsel have done? Placing Burris on the stand, the only reasonable alternative, would have opened the door to exploration of aspects of his personality and criminal history that counsel sensibly wanted to avoid.

Finally, Burris blames his former lawyers for omitting, from the brief on appeal to the Supreme Court of Indiana, an argument that the jury's inability to reach a verdict was a mitigating factor that the judge should have considered. No case law in Indiana or any other jurisdiction, then or now, supports the argument. Cases such as *McCleskey v. Kemp*, 481 U.S. 279, 306, 107 S.Ct. 1756, 1774–75, 95 L.Ed.2d 262 (1987), which say that states "cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the [death] penalty", deal with circumstances about the accused and the crime, not with the legal process. Counsel filed a careful brief making recognized legal arguments, which the Supreme Court of Indiana took seriously. In contending that this is ineffective, Burris's current lawyers must have in mind a model of appellate advocacy in which counsel fill briefs with every possible theory in the hope that lightning will strike. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), holds that the Constitution does not require such an approach, which weakens an appellate presentation. No more need be said.

Burris has received abundant consideration from both state and federal courts. He has had the aid of many competent and diligent lawyers during litigation that spans almost two decades. Like the district judge, we conclude that the sentence was imposed in accord with all constitutional requirements.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting in part and concurring in part.

The narrow issue before us is not whether Burris suffered ineffective assistance of counsel at the sentencing phase of his trial, but whether he is entitled to an evidentiary hearing before the federal courts make that determination. The majority says no. The key point is that, under the pre-AEDPA law that the majority correctly finds applicable, Judge Sharp said yes—a hearing is mandatory.

Judge Sharp nevertheless denied Burris a hearing, based on his conclusion that the AEDPA's 28 U.S.C. § 2254(e)(2) governed. The majority has decided that the latter ruling is wrong; in this I agree. Section 2254(e)(2) applies only to state prisoners who, through their own fault, did not bring a constitutional claim to the attention of the state courts. 28 U.S.C. § 2254(d) does not apply either, for, as Judge Sharp noted, the "decision of the Supreme Court of Indiana cannot be considered a careful and well-reasoned opinion requiring deference under

§ 2254(d)." *Burris v. Parke,* 948 F.Supp. 1310, 1321 (N.D.Ind.1996).

What then for Burris's evidentiary hearing? Judge Sharp gave the answer under law that he mistakenly believed to be foreclosed—that a federal evidentiary hearing would be mandated:

> The Seventh Circuit has held that upholding the failure of a state court to provide a petitioner with a full and fair hearing would reward that state court for its denial of due process. *See Bracy v. Gramley,* 81 F.3d 684, 693 (7th Cir.), *petition for cert. filed* (Sept. 23, 1996). In this case, the court finds that the courts of the State of Indiana failed to provide Burris with a full and fair hearing on his ineffective assistance claims. *Thus, under the pre-AEDPA standards of Townsend and Keeney,* because the Supreme Court of Indiana dismissed Burris's PCR petition as successive without allowing for discovery, holding an evidentiary hearing or addressing the merits of Burris's ineffective assistance claims which were before the court in the first instance, *it would appear that this court would be mandated to hold the requested evidentiary hearing.*

*Id.* at 1323 (emphasis supplied) (footnote omitted). The Indiana courts had never adequately heard Burris's claims, and so *Townsend* obliged the district court to hear those claims itself. *Id.*[1]

Since, *as the majority holds,* the pre-AEDPA law applies, I agree with Judge Sharp's conclusion that an evidentiary hearing is required. One may debate the merits of the ineffective assistance claim on the basis of the present record, but to do so is highly conjectural and an exercise in futility. As this court has often noted, the adequacy of the record is a crucial consideration in evaluating ineffective assistance claims. *Cf. United States v. Draves,* 103 F.3d 1328, 1335 (7th Cir.1997); *United States v. McKenzie,* 99 F.3d 813, 816 & n. 2 (7th Cir.1996). Here we are talking about a brain injury from a bullet

and its significance as a mitigating factor. Any efforts to analyze this apparent source of brain damage on the present record are completely speculative. I find particularly simplistic the view that, since Burris's lawyers portrayed him as bright and a good conversationalist, they would be disabled to explore his brain injury. The reality is that none of the advocates at oral argument could say anything specific about the brain injury, although none of them denied that he had suffered one.

Quite correctly, the majority holds that § 2254(e)(2) does not apply to Burris's claim because the Indiana courts never accorded him an opportunity in the state courts to introduce evidence on the point. There was no "failure" on the part of the prisoner. Since Burris was not at fault and § 2254(e)(2) is not applicable, the crucial question is what law applies. The majority denigrates the authority of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), by observing that it was "overruled in part" by *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and "supersede[d]" by § 2254(e). Maj. Op. at 259. This is the majority's most serious error. What the majority does not point out is that the part of *Townsend* that *Keeney* overruled has no application here, because Burris was not at fault. *See Spreitzer v. Peters,* 114 F.3d 1435, 1456 n. 9 (7th Cir.1997). For the same reason, § 2254(e)(2), the only AEDPA provision that even arguably governs evidentiary hearings, has no bearing here—as the majority itself concludes. Hence, it is hard to see how *Townsend* is superseded. When the state courts have refused to hear the claim of a state prisoner, *Townsend* still binds us to ensure that the petitioner receives a hearing in federal court. The reason is the same today as it was thirty-three years ago:

> State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamen-

---

1. Judge Sharp cited two separate grounds in *Townsend* that dictated a hearing for Burris's claims: that "(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing," and that "(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing." *Townsend,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).

tal liberties of the person, safeguarded against state action by the Federal Constitution. Simply because detention so obtained is intolerable, the opportunity for redress, which presupposes the opportunity to be heard, to argue and to present evidence, must never be totally foreclosed. It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues. *Thus a narrow view of the hearing power would totally subvert Congress' specific aim in passing the Act of February 5, 1867,* of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution.

*Townsend,* 372 U.S. at 312, 83 S.Ct. at 756–57 (emphasis added) (citation omitted).

Judge Sharp ruled that the Indiana courts have "failed to provide Burris with a full and fair hearing on his ineffective assistance claims." [2] *Burris,* 948 F.Supp. at 1323. As Judge Sharp realized, *Townsend* therefore mandates that the district court hold an evidentiary hearing. The majority reverses this, based on unsound law and fragmentary facts.

I respectfully dissent and would vacate the judgment and remand for a hearing.

---

**2.** Burris raises several related claims. His request for the appointment of a neuropsychologist would go hand in hand with the evidentiary hearing on his brain injury. The neuropsychologist's participation in the hearing is necessary to make the hearing meaningful, and thus would meet the requirements of 21 U.S.C. § 848(q)(9). Further, the psychologist who examined Burris in 1991 believed at the time, incorrectly, that he was in possession of Burris's complete medical file. He was not—and among the files missing were the reports of the brain damage at issue. We thus cannot know whether Burris's attorney should reasonably have investigated the brain damage. Whether he received ineffective assistance of counsel when his attorney failed to appeal an adverse and erroneous evidentiary ruling may also be ripe for exploration at a hearing, as might the sentencing judge's erroneous conception of mitigation evidence.

Finally, in the face of affidavits from Burris's attorney disavowing any particular reason *at all* for failing to investigate and present to the jury evidence of Burris's alleged neurological impairment, it is inappropriate for the majority to engage in conjecture (and praise) for the attorney's "strategic" decisions.