Gary BURRIS, Petitioner–Appellant,

v.

Al C. PARKE, Respondent–Appellee.

No. 97–1218.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 14, 1997.

Decided Nov. 15, 1997.

Amended Dec. 1, 1997.

Alan M. Freedman (Submitted), Freedman & Bornstein, Chicago, IL, for Petitioner–Appellant.

Jeffrey A. Modistee, Office of the Attorney General, Indianapolis, IN, for Respondents–Appellees.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Last June we affirmed the district judge's order denying relief under 28 U.S.C. § 2254 in this capital case. *Burris v. Parke,* 116 F.3d 256 (7th Cir.1997). A petition for rehearing with suggestion of rehearing en banc was filed and denied, and the mandate issued on August 22. We have twice denied requests for stays of execution, most recently on November 12. Now, with execution less than a week away, Burris asks us to recall our mandate and entertain arguments based on a neuropsychologist's testimony at a state clemency hearing on November 3. Burris apparently has in mind the procedure employed in *Thompson v. Calderon,* 120 F.3d 1045 (9th Cir.) (en banc), cert. granted, —— U.S. ——, 118 S.Ct. 14, 138 L.Ed.2d 1037 (1997), in which the court recalled its mandate to avoid the procedures the Antiterrorism and Effective Death Penalty Act establishes for successive collateral attacks. We need not anticipate the Supreme Court's treatment of *Thompson,* because even the ninth circuit would treat Burris's request as a successive collateral attack, which must be dismissed because it does not satisfy the statutory criteria.

■ After its amendment by the AEDPA, 28 U.S.C. § 2244(b) reads in part:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three–judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

Appellate courts agree that a post–judgment motion under Fed.R.Civ.P. 60(b) in the district court, or the equivalent motion in the court of appeals—which is to say, a motion to recall the mandate—is a "second or successive" application for purposes of § 2244(b). *Mathenia v. Delo,* 99 F.3d 1476 (8th Cir. 1996) (Rule 60(b) motion); *Ruiz v. Norris,* 104 F.3d 163 (8th Cir.1997) (motion to recall mandate); *Felker v. Turpin,* 101 F.3d 657 (11th Cir.1996) (Rule 60(b) motion). Cf. *Felker v. Turpin,* 101 F.3d 95 (11th Cir.1996) (suit under 42 U.S.C. § 1983); *Hill v. Hopper,* 112 F.3d 1088 (11th Cir.1997) (same); *In re Sapp,* 118 F.3d 460 (6th Cir.1997) (same). Otherwise the statute would be ineffectual. Instead of meeting the requirements of § 2244(b), the petitioner would restyle his request as a motion for reconsideration in the initial collateral attack and proceed as if the AEDPA did not exist. Even the ninth circuit, which concluded in *Thompson* that a court may reopen a case to readjudicate old arguments, has held that a petition to recall the mandate so that the court may determine

the effect of new evidence and arguments is a successive collateral attack that must be evaluated under the AEDPA's mechanism. *Nevius v. Sumner,* 105 F.3d 453, 461–62 (9th Cir.1996), approved in *Thompson,* 120 F.3d at 1051.

■ There is one potential difference between Rule 60(b) motions in the district court and motions to recall mandate in the court of appeals: the Rule 60(b) motion may be designed as an end run around the appellate court's gatekeeping function under § 2244(b)(3), while the motion to recall mandate is addressed to the tribunal with authority to authorize additional proceedings. But this difference does not matter substantively. We agree with *Ruiz* and *Nevius* that a motion filed in the court of appeals after the time for rehearing has expired (or rehearing has been sought and denied) may be granted only if it meets the substantive criteria of § 2244(b)(2). Cf. *Felker v. Turpin,* —— U.S. ——, ——, 116 S.Ct. 2333, 2339, 135 L.Ed.2d 827 (1996) (a petition filed in the Supreme Court under 28 U.S.C. § 2241 must be evaluated in light of the new substantive criteria). To the extent either *Nevius* or *Thompson* implies that the AEDPA may be bypassed and the common–law criteria for recalling a mandate used instead if the petition does nothing but reiterate old arguments, we have grave doubts, but we need not come to rest on that subject today.

Burris argued in the appeal decided last June that the three lawyers representing him at his second capital sentencing proceeding rendered ineffective assistance because they did not obtain additional psychiatric and neurological evidence concerning the effect of a bullet wound he received many years earlier. We replied (116 F.3d at 259–60, emphasis in original):

> Burris wanted the district court to appoint a neuropsychologist to investigate him and opine at a federal evidentiary hearing whether he suffers from a brain injury that contributed to his vicious conduct. Such an appointment is possible if the expert services "are reasonably necessary for the representation of the defendant". 21 U.S.C. § 848(q)(9), applied by § 848(q)(4)(B) to capital cases in which

relief is sought under § 2254. To establish that a service is "reasonably necessary," the defendant must make a preliminary showing, which Burris has not done. His current lawyers suspect—more accurately, believe that his former lawyers should have suspected—that a bullet to the head in the 1970s damaged Burris's brain. All that the record shows, however, is that Burris complains of headaches, which plague many people without brain damage. After his arrest, Burris was examined by two psychiatrists. Their 1981 report describes the gunshot wound as "superficial" and concludes that Burris displays "no indications of mental illness or deficiency". Before the second penalty proceeding, Burris's lawyers arranged for another mental examination; a psychologist interviewed and examined Burris in 1991 and concluded that he shows no signs of brain damage or dysfunction. Counsel meanwhile found witnesses to testify that Burris is alert, intelligent, a good conversationalist and jailhouse lawyer, and so on. *None* of the evidence available at the time suggested the utility of further mental examinations, and counsel therefore cannot be called incompetent under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ What a neuropsychologist might turn up today is irrelevant; so is the fact that the psychologist who examined Burris in 1991 now wants to investigate the potential effects of the bullet. The performance of counsel is assessed by what was known at the time or would have been discovered through diligent pursuit of lines of inquiry reasonable at the time; this was not such a line, given the multiple mental exams ending in clean bills of mental health and the fact that lay witnesses likewise detected no mental problems.... What is more, counsel could not have developed a brain-damage theory without risk of undercutting the evidence of Burris's turnaround in prison, and without opening up the possibility that a jury would conclude that Burris was undeterrable. As we observed in *Stewart v. Gramley,* 74 F.3d 132 (7th Cir.1996), jurors may not be impressed with the idea that to know the cause of viciousness is to excuse it; they may conclude instead that,

when violent behavior appears to be outside the defendant's power of control, capital punishment is appropriate to incapacitate. Counsel avoided this potential pitfall; their performance was well in excess of the constitutional floor. Burris submits that the testimony at his clemency hearing shows that lines of inquiry available at the time of the second sentencing could have assisted Burris "without opening up the possibility that a jury would conclude that Burris was undeterrable." Let us suppose that the new evidence indeed supports that proposition. All this means, however, is that Burris wants to relitigate, with the aid of better evidence, the ineffective assistance claim that he has already litigated and lost. Section 2244(b)(1) provides: "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." To the extent Burris rings changes on his ineffective-assistance theory, his contentions "shall be dismissed." If on the other hand we indulge the approach of *Thompson* and apply the common law rule that a mandate may be recalled on account of intervening authority or grave error, Burris still is not entitled to relief. There is no intervening authority, and the testimony at the clemency hearing is the sort of information that we have already held to be legally irrelevant to an assessment of counsel's adequacy.

If instead we understand Burris to be making a new argument, then he must satisfy the requirements of § 2244(b)(2). He does not rely on a rule of constitutional law articulated after our prior decision, so § 2244(b)(2)(A) is irrelevant. And he gets no more aid from § 2244(b)(2)(B)—not only because he does not contend that the neuropsychologist's testimony shows that he is actually innocent, but also because we held in *Hope v. United States*, 108 F.3d 119 (7th Cir.1997), that § 2244(b)(2)(B)(ii) requires the petitioner to show by clear and convincing evidence that but for the asserted constitutional error he would have been acquitted "of the underlying offense." Burris's arguments concern sentencing; his guilt "of the underlying of-

fense" is beyond question. See *Burris v. Farley*, 51 F.3d 655 (7th Cir.1995).

When recalling its mandate in *Thompson*, the court stressed that the petitioner presented neither new evidence nor new arguments but wanted only to put his original arguments before the court en banc belatedly. 120 F.3d at 1048–51. One might have supposed that this brought Thompson's claim securely within the reach of § 2244(b)(1) as well as § 2244(b)(3)(E), which says that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing". See *Thompson*, 120 F.3d at 1064–65 (Hall, J., dissenting). The ninth circuit not only granted relief on the basis of an argument made and rejected before but also reheard the case after the panel declined to recall its mandate. No matter; the Supreme Court will have the last word on the ninth circuit's approach. Burris wants us to recall our mandate to take a step that every court of appeals that has addressed the subject believes forbidden by § 2244(b): reassessing old theories in light of new evidence. A state governor or clemency board may receive and act on such evidence; under § 2244(b), a federal court may not.

Accordingly:
- The motion to recall the mandate is denied because arguments of the kind Burris now presents initiate a successive collateral attack for the purpose of § 2244(b); and
- The implied motion for leave to commence a successive collateral attack is denied under § 2244(b)(1), (3)(C).

CUDAHY, Circuit Judge, dissenting:

Time is unfortunately not available in the imminence of the execution date to address in detail all the arguments raised by the majority. But a few general observations are appropriate.

We have before us a filing styled *Motion to Recall the Mandate of August 22, 1997 in a Capital Case.* This was the mandate relating to our opinion issued in *Burris v. Parke*, 116 F.3d 256 (7th Cir.1997), from which I dissented. The majority attempts to charac-

terize the present motion as a "second or successive" application for a writ of habeas corpus for purposes of 28 U.S.C. § 2244(b).[1]

I think it is nothing of the sort; instead it is an unexceptional motion connected to a habeas corpus application, which was denied over my dissent.[2] This is not a case like *Nevius*, in which the petitioner asked the Ninth Circuit to recall its mandate so that he could present new claims that he was barred from addressing in a subsequent habeas petition. Here no new claim has been made. No new issue has been raised. See *Thompson*, 120 F.3d at 1051 ("in *Nevius*, we explicitly stated that '*Nevius* wants us to recall our mandate . . . not to nullify an erroneous decision, but to reopen the proceeding so that he may present new claims that cannot be addressed in a subsequent petition.' This statement recognizes . . . that the mandate may be recalled to correct an erroneous decision which would result in a manifest injustice.") (citation omitted).

The question here is—as it has been all along—whether there should be an evidentiary hearing to examine the medical facts underlying Mr. Burris' claim of ineffective assistance of counsel in his capital sentencing proceeding. One new element has been added by the present motion, which is important but which merely underlines and clarifies the claims and arguments that have been before us all along. The new material consists of testimony that was not available until it was given on November 3, 1997.

On that date, Dr. Michael Gelbort, a Clinical Neuropsychologist, testified at a clemency hearing for Mr. Burris held in Indianapolis. Dr. Gelbort is Vice President and a member of the Board of Directors of the Brain Injury Association of Illinois and a member of the Governor's Advisory Council on Brain Injury and Spinal Cord Injury. Dr. Gelbort testified in part as follows:

> Mr. Burris, as far as I can tell from the information provided to me, has had a gunshot wound near his head and neck. He also has suffered from migraine headaches and blurry vision; he's had blackouts and tinnitus, which is ringing in the ears. These are all signs of neurological dysfunction or can relate to neurological dysfunction. They are things that when presented to me in my office practice typically result in a neuropsychological examination.

\*　　\*　　\*　　\*　　\*　　\*

A neuropsychological examination is one that looks at behavior and problems with behavior and allows you to infer or understand if there's brain dysfunction present. Because of the nature of Mr. Burris' defi-

---

1. With the logic pursued in the majority opinion, few aspects of routine motions practice could escape the black hole of the AEDPA.

2. The majority seeks to apply the strictures of Rule 60(b), which tightly constrain the district courts, to an appellate motion to recall a mandate. Such an application has scant legal support. *Mathenia* and *Felker II* do not equate a motion under Rule 60(b) with a motion to recall a mandate. In *Ruiz*, the Eighth Circuit simply assumes that a "motion to recall the mandate to allow consideration of a *new ground or contention* is the functional equivalent of a second or successive habeas petition" and is therefore subject to the AEDPA, *see Ruiz*, 104 F.3d at 164 (emphasis added), and does not consider the implications of confining the discretion of a court of appeals to that of a district court under Rule 60(b). Notably, the court in Ruiz felt compelled to justify its decision on the merits as well. Finally, *Felker I, Hill* and *Sapp*, which treat certain claims filed in a district court under 42 U.S.C. § 1983 as successive habeas applications, do not deal with post-judgment motions at all. Thus whether the same considerations apply to a motion to recall the mandate in an appellate court as apply to a motion under Rule 60(b) is an open question. The Ninth Circuit has noted, "[T]he authority of a Court of Appeals to recall its mandate is not conferred by statute, it exists as part of the court's power to protect the integrity of its own processes." *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir.1996) (quoting *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988)). Moreover, "[w]hether the power is exercised at all falls within the discretion of the court, but such discretion should be employed to recall a mandate only when good cause or unusual circumstances exist sufficient to justify modification or recall of a prior judgment." *Zipfel*, 861 F.2d at 567. While the recall of a mandate may resemble in some respects a post-judgment motion in the district court, we do not and should not bind ourselves to the statutory restrictions placed upon the district courts under Rule 60(b). *Cf. Felker*, —— U.S. at ——, 116 S.Ct. at 2339 (declining to find that the Supreme Court is bound generally by § 2244(b), but allowing the statute to "inform" the Court's consideration of an original habeas petition under 28 U.S.C. § 2241).

cits, something like an EEG might be indicated, and, in fact, one was ordered, although I never saw the results from that. Some physician at some point in time decided that there was a high unlikelihood [sic] of there being brain dysfunction to order such a test. Other tests, because of his fairly normal-appearing behavior, were deemed by physicians who are not necessarily trained to appreciate or to recognize with a diagnosed brain dysfunction—other tests were not ordered. But if he had come to someone like me or to physicians who I work with, almost certainly he would have had a neuropsychological examination ordered because that's the appropriate type of testing to look for the type of damage that he may demonstrate.

Dr. Gelbort also addressed the contention that Mr. Burris' apparent intelligence might be inconsistent with brain injury:

... [Y]ou can have fairly significant neurocognitive or brain dysfunction present and you can also have damage that doesn't show up, just in normal interaction. For simplicity's sake, you can bring cognitive functioning into the thinking skills which is when people say "He talks well," they're talking about thinking skills. You also have to recognize that a deeper portion of the brain, the older portion of the brain, the limbic system, has to do with emotional behavior. It has to do with the ability to recognize threatening situations and respond appropriately to them.

The gunshot wound, or other things in this man's history, certainly could have had effects on the limbic system which wouldn't be appreciated with people just interacting with him and which is the system that has a lot to do with how we respond to stress situations, and when dangerous behavior occurs, a good bit of it arises from the limbic system. That's not a system that the psychiatrist interacting with him is necessarily going to recognize as having problems with.

The long and the short of it is, is that many of the patients that I see in my clinical practice have deficits in terms of brain functioning that their physicians typically don't appreciate, don't recognize. . . .

In my dissent from the principal opinion in this matter I made the following observation:

Judge Sharp [the court below] ruled that the Indiana courts have "failed to provide Burris with a full and fair hearing on his ineffective assistance claims." *Burris v. Parke,* 948 F.Supp. 1310, 1323 (N.D.Ind. 1996). As Judge Sharp realized, Townsend therefore mandates that the district court hold an evidentiary hearing. The majority reverses this, based on unsound law and fragmentary facts.

*Burris v. Parke,* 116 F.3d 256, 262 (7th Cir. 1997) (Cudahy, J., dissenting in part and concurring in part) (footnote omitted).

I therefore respectfully dissent and would grant the motion.

